1          UNITED STATES DISTRICT COURT
2        FOR THE NORTHERN DISTRICT OF ALABAMA

3    UNITED STATES OF AMERICA,           2:03-CR-182-KOB

4          PLAINTIFF,                    JULY 16, 2007

5          V.                            BIRMINGHAM, AL

6    KENNETH K. LIVESAY,

7          DEFENDANT.
     * * * * * * * * * * * * *

8
              TRANSCRIPT OF RESENTENCING
9      BEFORE THE HONORABLE KARON O. BOWDRE
            UNITED STATES DISTRICT JUDGE
10
     APPEARANCES:
11
     FOR THE UNITED STATES:
12
     JAMES D. INGRAM, AUSA
13   BIRMINGHAM, ALABAMA

14   FOR THE DEFENDANT:

15   THOMAS J. SPINA
     BIRMINGHAM, ALABAMA
16
     COURT REPORTER:
17
     LINDY M. FULLER, RMR, CRR
18   BIRMINGHAM, ALABAMA  35203

19

20

21

22

23

24

25

P R O C E E D I N G S

(IN OPEN COURT, 11:23 a.m.)

THE COURT:  I APOLOGIZE FOR THE DELAY, BUT AS I THINK YOU MAY HEAR IN A WHILE, I HAVE WRITTEN FAR MORE TO THIS SENTENCING THAN I NORMALLY DO AND I DID NOT RECEIVE THE GOVERNMENT'S MEMO UNTIL AFTER I HAD LEFT THE OFFICE YESTERDAY.  SO I DID NOT HAVE THE BENEFIT OF IT UNTIL LATE LAST NIGHT.

WE ARE HERE TODAY TO RESENTENCE THIS DEFENDANT IN ACCORDANCE WITH THE OPINION OF THE ELEVENTH CIRCUIT FILED APRIL 23, 2008, AND ISSUED AS A MANDATE ON MAY 22ND OF THIS YEAR.  THAT OPINION VACATED THE SENTENCE AND REMANDED THE CASE FOR THIS COURT TO RESENTENCE.

SPECIFICALLY, THE ELEVENTH CIRCUIT DIRECTED THAT THE COURT FOLLOW THE PROCEDURAL RULES SET FORTH IN U.S. V. GALL IN CONSIDERATION OF THE FACTORS FOUND AT U.S.S.G, SECTION 5K1.1A AND ALSO IN CONSIDERING THE FACTORS AT 18 U.S.C. SECTION 3553(A).

THE COURT ALSO TAKES NOTE THAT THE BOOKER DECISION APPLIED TO CASES ON DIRECT APPEAL IN 2006 AND, THEREFORE, IN RESENTENCING THE DEFENDANT TODAY THE GUIDELINES WILL BE CONSIDERED AS ADVISORY ONLY PURSUANT TO THE BOOKER DECISION.

TO RECONFIRM THE COURT'S PREVIOUS FINDINGS, THE GUIDELINE LEVEL WAS CALCULATED TO BE LEVEL 28, WHICH, WHEN

1    COMBINED WITH THE CRIMINAL HISTORY CATEGORY OF I, RESULTED

2    IN A SENTENCING RANGE OF 78 TO 97 MONTHS AND A SUPERVISED

3    RELEASE TERM OF TWO TO THREE YEARS, WITH A FINE RANGE OF

4    $12,500 TO ONE MILLION DOLLARS.

5             THE COURT HAS CONSIDERED THE GOVERNMENT'S MOTION

6    FOR SUBSTANTIAL ASSISTANCE DEPARTURE AND THE ARGUMENTS OF

7    COUNSEL AND FINDS THAT THAT MOTION SHOULD BE GRANTED.

8             MR. SPINA, DO YOU WISH TO BE HEARD OR TO MAKE ANY

9    COMMENT IN ADDITION TO THOSE INCLUDED IN YOUR SENTENCING

10   MEMORANDUM BEFORE THE COURT ANNOUNCES ITS CONCLUSIONS?

11            MR. SPINA:  YES, YOUR HONOR, I THINK BOTH.  YOU

12   WANT US TO STAND HERE?

13            THE COURT:  THAT'S FINE.

14            MR. SPINA:  I THINK BOTH OF US FEEL COMPELLED TO

15   SAY SOMETHING.  IT'S UNUSUAL TO BE IN THIS POSITION, AND I

16   HAVE NEVER BEEN ENGAGED IN A SENTENCING OF AN INDIVIDUAL

17   FOR THREE TIMES.

18            TO PUT THAT IN PERSPECTIVE, I RECOGNIZE THAT THE

19   OFFENSE, WHICH HAS BEEN SAID SO MANY TIMES BY SO MANY

20   DIFFERENT PEOPLE WAS HORRIBLE, EXTRAORDINARY, MASSIVE, ALL

21   THE WORDS AND ADJECTIVES THAT HAVE BEEN USED TO DESCRIBE

22   THE UNDERLYING OFFENSE, PARTICULARLY IN THE GOVERNMENT'S

23   SENTENCING MEMO, THEY REFER ON NUMEROUS OCCASIONS TO

24   MR. LIVESAY AND OTHERS' CONDUCT.  I THINK WE SHOULD FOCUS

25   ON MR. LIVESAY'S CONDUCT AND NOT THE CONDUCT OF OTHERS.

1          IT IS CLEAR THAT MR. LIVESAY HAS BEEN THROUGH A

2     LEGAL MORASS OF PROCEDURE.  THE BEHAVIOR FOR WHICH WE

3     STAND BEFORE THE COURT TO BE SENTENCED OCCURRED ALMOST TEN

4     YEARS AGO.  I WOULD SAY NINE YEARS AGO WOULD BE RELATIVELY

5     ACCURATE.

6          HIS INITIAL PLEA, AND THE COURT DIDN'T ASK ME IF

7     I HAD 35 DAYS TO REVIEW THE PRESENCE REPORT, I HAVE

8     ACTUALLY HAD 1,500 DAYS TO REVIEW THE PRESENCE REPORT.

9          THE COURT:  THANK YOU, MR. SPINA, FOR POINTING

10    THAT OUT TO THE COURT.

11          MR. SPINA:  THAT BEGAN FOUR YEARS AGO.  AND EVERY

12    TIME A JUDGE EXERCISES HIS BOOKER DISCRETION, THE ELEVENTH

13    CIRCUIT SEEMS TO FIND FLAW.  FIRST, ON A SUBSTANTIVE

14    REASONABLENESS STANDARD.  THE SECOND TIME, ON A PROCEDURAL

15    ERROR WHICH IS WHY WE ARE HERE TODAY.  THEY NEVER REACHED

16    SUBSTANTIVE REASONABLENESS IN LIVESAY TWO -- NEVER GOT

17    THERE.

18          I THINK THE ISSUE IS REALLY MORE FOCUSED THAN

19    GOING BACK TO REVISIT HOW WE GOT HERE TO BEGIN WITH, I

20    REALLY THINK WHAT WE ARE TALKING ABOUT is GOVERNMENT'S 5K

21    MOTION RECOMMENDING A 20 MONTH SENTENCE, WHICH IS A

22    SIGNIFICANT DEPARTURE IN AND OF ITSELF, BUT I THINK IT'S

23    APPROPRIATE BECAUSE IT RECOMMENDS OR AT LEAST MAKES

24    REFERENCE TO HOW EXTRAORDINARY, HOW TIMELY HIS COOPERATION

25    WAS.  BUT THE COURT IS WELL AWARE THAT IT IS NOT BOUND BY

THE GOVERNMENT'S RECOMMENDATION AND, ON NUMEROUS OCCASIONS

IN THIS COURT, IN THIS BUILDING, LET ME SAY, JUDGES,

DISTRICT COURT JUDGES HAVE NOT GIVEN DEFENDANTS AS MUCH AS

THE GOVERNMENT IS ASKING FOR AND HAVE, ON OCCASION, GIVEN

DEFENDANTS MORE FOR THEIR ASSISTANCE THAN THE GOVERNMENT

HAS REQUESTED IN THEIR RECOMMENDATION.

THE GOVERNMENT HAS REQUESTED A 20 MONTH SENTENCE

WHICH IS, IN ESSENCE, A LEVEL FOURTEEN OFFENSE.  THE

PREVIOUS SENTENCES WERE LEVEL TEN OFFENSES.  SO WHEN WE

TALK ABOUT THE ELEVENTH CIRCUIT AND FROM THE GOVERNMENT

ABOUT THIS EXTRAORDINARY DEPARTURE, WE ARE REALLY TALKING

ABOUT FOUR LEVELS.

NOW, IF THE COURT WERE INCLINED TO ACCEPT THEIR

RECOMMENDATION BUT WANTS TO TWEAK IT SLIGHTLY, THE COURT

COULD DEPART TWO LEVELS, MORE ON THE 5K WHICH PUTS US TO A

LEVEL 20 OFFENSE, AND THEN CONSIDER THE 3553(A) FACTORS.

OR, WHICH TO ME, WHAT HAS BEEN LAID OUT THERE FOR THE

COURT, I AM NOT GOING INTO IT, I HAVE LAID IT OUT AS WELL

AS I KNOW HOW TO LAY IT OUT IN TERMS OF COMPARING HIS

ACTIONS AND BEHAVIOR WITH THOSE OTHERS THAT HAVE BEEN

SENTENCED.  AND I THINK HE CLEARLY FITS IN AN AREA AND

REPUDIATION, THE IMPERFECT WITHDRAWAL, WHATEVER YOU WANT

TO CALL IT, DON'T CONSIDER IT FOR 5K, PLEASE DON'T

CONSIDER IT FOR 5K.  CONSIDER IT AS A MATTER FOR VARIANCE.

IT'S NOT PERFECT.  IF IT WERE PERFECT, WE PROBABLY WOULD

1  HAVE GONE TO TRIAL.  WE DON'T LIVE IN A PERFECT WORLD.

2        WE ARE TRYING TO GET THE COURT TO IMPOSE,

3  REIMPOSE THE SENTENCE THAT HAS ALREADY BEEN IMPOSED.  SO,

4  IN ESSENCE, I AM ASKING THE COURT TO IMPOSE A SENTENCE

5  THAT IS CONSISTENT WITH WHAT I AM REQUESTING.  THE COURT

6  COULD GET TO LEVEL TEN TWO WAYS:  GRANT THE GOVERNMENT'S

7  MOTION FOR 5K, IMPOSE WHAT THEY'RE REQUESTING AT A LEVEL

8  FOURTEEN, CONSIDER 3553(A) FACTORS WHICH IS SUPERLATIVE --

9  THE GREATEST HUMAN BEING I HAVE EVER HAD OPPORTUNITY TO

10  DEAL WITH AND REPRESENT.  HE COULDN'T HAVE DONE BETTER.

11  YOU HEARD HIS TESTIMONY.  YOU SAW HIM TESTIFY.  LOOK WHAT

12  HE HAS DONE WITH HIS LIFE IN THE WAKE OF ALL THIS.  WE ARE

13  TRYING TO -- YES, PUNISHMENT'S A FACTOR.  THE GOVERNMENT

14  PRETEND LIKE GALL DIDN'T EVEN COME OUT.  IT'S SORT OF LIKE

15  HOW THEY DEAL IT WITH GUIDELINES BEING ADVISORY -- THEY

16  IGNORE IT.  AND THEY ARE NOT ASHAMED TO ADMIT IT AND I AM

17  OKAY WITH THAT.  IT'S LIKE GUIDELINES ARE STILL MANDATORY,

18  WE ARE RECOMMENDING A GUIDELINE SENTENCE.  IT'S NOT THE

19  LAW ANY MORE; THEY WANT TO GO BACK TO THE MARTIN CASE.  MY

20  GOODNESS, THEY CITE MARTIN.  MARTIN WAS DECIDED BEFORE

21  GALL.  MARTIN DOESN'T HAVE ANY APPLICABILITY HERE.

22        THEY WANT TO TALK ABOUT PUGH.  PUGH DOESN'T HAVE

23  ANY APPLICABILITY HERE.  THAT CASE WAS ABOUT SUBSTANTIVE

24  REASONABLENESS, NOT ABOUT WHY WE ARE HERE TODAY.  I AM NOT

25  GOING TO GO IN AND SAY ALL THE NICE THINGS THAT YOU COULD

1  SAY ABOUT KEN BECAUSE I HAVE SAID IT SO MANY TIMES, AND I

2  KNOW THE COURT TOOK THE TIME TO REVIEW WHAT I HAVE

3  SUBMITTED IN THIS INSTANCE AND WHAT I HAVE SUBMITTED ON

4  TWO PRIOR OCCASIONS.

5        I HAVE UPDATED WITH ONE LETTER FROM HIS WIFE.

6  HIS KIDS HAVE NOW, ONE HAS GRADUATED FROM COLLEGE, HAS

7  GONE ON TO WORK.  ONE IS ABOUT TO GRADUATE FROM COLLEGE.

8  HE IS MAKING ENDS MEET, HIS WIFE IS STRUGGLING WITH HER

9  MEDICAL CONDITION TO MAKE EIGHT TO TEN BUCKS AN HOUR

10  WORKING OUT OF THE HOUSE BECAUSE SHE TRIED TO DO MORE BUT

11  COULDN'T BECAUSE OF HER HEALTH.  YOU KNOW, PROBATION IS A

12  SENTENCE; GALL RECOGNIZES THIS, JUDGE.  THE GOVERNMENT'S

13  GOT TO COME AROUND TO THE FACT THAT IT IS A SENTENCE.

14        IF THE COURT WERE INCLINED TO WANT TO NOTCH IT UP

15  A LITTLE BIT, TACK ON SOME COMMUNITY SERVICE TO GO WITH

16  THAT.  BUT TO REMOVE THIS MAN FROM SOCIETY, TO BACK HIM

17  UP, TO PUT HIS FAMILY IN HARMS WAY SERVES NO PURPOSE, AT

18  LEAST FROM MY POINT OF VIEW AND FROM THE PARSIMONY

19  PROVISION IN THE SENTENCING STATUTE THAT WOULD MAKE IT --

20  JAIL WOULD NOT BE APPROPRIATE.

21        I WOULD LIKE TO RESERVE A FEW COMMENTS FOR AFTER

22  THE GOVERNMENT SPEAKS.  I ASSUME THEY ARE GOING TO GET TO

23  SPEAK, AND I KNOW KEN WANTS TO SPEAK ALSO.  THANK YOU,

24  JUDGE.

25        THE COURT:  THANK YOU, MR. SPINA.  MR. LIVESAY,

1 IS THERE ANYTHING YOU WOULD LIES TO SAY BEFORE THE COURT

2 PRONOUNCES SENTENCE?

3           THE DEFENDANT:  YES.

4           THE COURT:  TAKE YOUR TIME.

5           THE DEFENDANT:  I APPRECIATE YOU LETTING ME

6 ADDRESS THE COURT TODAY, AND MY COMMENTS WILL BE BRIEF.

7           FIRST AND MOST IMPORTANTLY, I WANT TO TELL YOU

8 AND THIS COURT AND EXPRESS MY COMPLETE AND TOTAL REMORSE

9 AND SORROW FOR MY ROLE IN THE HEALTHSOUTH FRAUD.  AND I

10 WANT TO AGAIN APOLOGIZE TO ALL THE VICTIMS OF THE FRAUD,

11 AND THERE WERE MANY.  HEALTHSOUTH SHAREHOLDERS AND BOND

12 HOLDERS AND EMPLOYEES AND VENDORS AND OTHER STAKE HOLDERS,

13 THERE WERE A LOT OF PEOPLE NEGATIVELY IMPACTED BY WHAT WE

14 DID, AND I WANT TO APOLOGIZE TO ALL OF THEM.  AND I WANT

15 THEM TO KNOW AND I WANT YOU TO KNOW THAT I ACCEPT COMPLETE

16 AND TOTAL RESPONSIBILITY FOR MY ACTIONS.

17           I MADE A LOT OF BAD CHOICES AND DECISIONS AND

18 THEY WERE MINE AND MINE ALONE, AND I DON'T BLAME ANYBODY

19 ELSE BUT MYSELF.

20           YOUR HONOR, YOU HAVE A UNIQUE PERSPECTIVE ON WHAT

21 WENT ON AT HEALTHSOUTH.  YOU PRESIDED OVER A TRIAL THAT

22 LASTED SEVERAL MONTHS AND WENT INTO GREAT DETAIL ABOUT

23 WHAT WENT ON.  AND YOU HEARD TESTIMONY FROM AND TESTIMONY

24 ABOUT MOST OF THE PEOPLE THAT PARTICIPATED IN THAT FRAUD.

25 AND I TESTIFIED FOR FOUR DAYS IN YOUR COURT AND I TRUST

1    THAT YOU REMEMBER AT LEAST SOME OF THAT TESTIMONY, AND I

2    HOPE THAT YOU REMEMBER MY STATE OF MIND WORKING AT

3    HEALTHSOUTH BEFORE THE FRAUD BEGAN AND THEN AS IT

4    DEVELOPED, EVOLVED AND SPUN OUT OF CONTROL.

5            AND WHAT IT WAS WHEN, IN 1999, I LEFT THE

6    ACCOUNTING DEPARTMENT.  THREE AND A HALF YEARS LATER THE

7    FRAUD FINALLY CAME TO AN END AND IT WAS REVEALED, AND

8    SHORTLY THEREAFTER I CAME FORWARD AND PLED GUILTY AND

9    BEGAN TO COOPERATE.  IN THE FIVE YEARS SINCE THEN, I HAVE

10   WORKED HARD TO REMAIN A PRODUCTIVE CITIZEN, I HAVE WORKED

11   HARD TO MAINTAIN STEADY EMPLOYMENT, WORKED HARD TO PROVIDE

12   FOR MY FAMILY.  I WORKED HARD TO REMAIN ACTIVE IN MY

13   CHURCH AND IN MY COMMUNITY AND I AM THANKFUL TO A LOT OF

14   PEOPLE FOR SUPPORTING ME AND FORGIVING ME.

15           ALSO, DURING THOSE FIVE YEARS I HAVE NEVER, NEVER

16   HESITATED TO COOPERATE, PROVIDE ASSISTANCE WHENEVER ASKED

17   FROM THE GOVERNMENT, VARIOUS AGENCIES FROM THE GOVERNMENT,

18   FORENSIC AUDITORS, ACCOUNTANTS AND OTHERS REPRESENTING

19   HEALTHSOUTH.  I HAVE MADE MYSELF AVAILABLE WHENEVER ASKED

20   AND BEEN TRUTHFUL, COMPLETELY TRUTHFUL, OPEN AND HONEST.

21   I HAVE TRIED TO HELP UNRAVEL THE MESS THAT WAS MADE AND I

22   BELIEVE AND I HOPE THAT THAT ASSISTANCE WAS BENEFICIAL.

23   SO AS I STAND HERE BEFORE YOU TODAY, I AM HOPING FOR SOME

24   RESOLUTION.  I AM HOPING THAT SOMEHOW THIS SENTENCE THAT

25   WAS PREVIOUSLY RENDERED CAN SOMEHOW BE UPHELD.

```
 1          I HAVE DONE EVERYTHING THAT WAS REQUIRED OF ME IN
 2   MY PLEA AGREEMENT, EVERYONE EXPECTED OF ME IN MY PLEA
 3   AGREEMENT, AND I HAVE MET ALL THE OBLIGATIONS THUS FAR OF
 4   MY PREVIOUS SENTENCES.  SO AT THIS POINT, FOR THE SAKE OF
 5   MY FAMILY, MA'AM, I AM HOPING FOR CLOSURE.  I KNOW YOU
 6   HAVE A WHOLE LOT TO CONSIDER, AND I RESPECT THAT.  I DO
 7   ASK YOU TO PLEASE CONSIDER THE NEEDS OF MY FAMILY AS YOU
 8   NOW DETERMINE THE APPROPRIATE SENTENCE.  THANK YOU FOR
 9   YOUR TIME.
10          THE COURT:  THANK YOU.  MR. INGRAM, DOES THE
11   GOVERNMENT HAVE ANYTHING TO SAY AT THIS TIME?
12          MR. INGRAM:  YES, YOUR HONOR; THANK YOU.  YOUR
13   HONOR, I KNOW THE COURT IS WELL VERSED IN CERTAINLY THIS
14   CASE AND THE ARGUMENTS THAT HAVE BEEN MADE BY BOTH SIDES,
15   BUT I WOULD LIKE FOR THE COURT'S BENEFIT AND FOR THE
16   RECORD JUST TO NOTE, TOUCH ON THREE KEY AREAS.  OF COURSE,
17   THE NATURE OF THE OFFENSE THAT BRINGS US HERE TODAY, THE
18   GOVERNMENT'S 5K MOTION WHICH WAS FILED ON BEHALF OF
19   MR. LIVESAY, AND THEN THE PERTINENT FACTORS UNDER 3553(A)
20   THAT THE COURT CONSIDERS IN MAKING ITS SENTENCING
21   DETERMINATION.
22          IT PROBABLY GOES WITHOUT SAYING, BUT, OBVIOUSLY,
23   THIS WAS A MASSIVE CRIME, A LOSS OF AT LEAST 1.4 BILLION
24   DOLLARS.  MR. LIVESAY WAS A KEY COMPONENT IN CREATING AND
25   FURTHERING AND DISGUISING THE FRAUD FOR THREE AND A HALF
```

1  YEARS.  AS ASSISTANT CONTROLLER, HE MADE UP THE NUMBERS,

2  HE FIGURED OUT WHERE TO HIDE THE FRAUD, HE DIRECTED

3  OTHERS, SUPERVISED OTHERS TO CARRY OUT THOSE ASSIGNMENTS.

4  HE WAS NOT THE PERSON ULTIMATELY BEHIND THE FRAUD, BUT HE

5  PLAYED A SIGNIFICANT ROLE IN HELPING TO CONDUCT THE FRAUD

6  AND TO KEEP IT HIDDEN FROM INVESTORS AND REGULATORS FOR

7  SEVERAL YEARS AGO UNTIL EVERYTHING CAME CRASHING DOWN IN

8  MARCH OF 2003.

9         BECAUSE OF THE NATURE OF THIS OFFENSE, THOSE, AND

10 THE FACTS UNDERLYING THAT, THAT'S HOW THE COURT, HOW

11 PROBATION REACHED THE LEVEL 28 BECAUSE OF THE SERIOUSNESS

12 OF THE BASE OFFENSE AND ENHANCEMENTS THAT WERE A PART OF

13 THE CRIME.  MR. SPINA, IN ADDRESSING THE COURT, SOMEHOW

14 MANAGED TO STEP RIGHT OVER THE FACT THAT THE COURT

15 PREFACED ITS REMARKS BY NOTING THIS IS A LEVEL 28 OFFENSE.

16 HE MANAGED TO JUMP RIGHT TO LEVEL 10 AND THEN ASKS THE

17 COURT TO WHITTLE AWAY FROM THERE, TAKING INTO

18 CONSIDERATION THE VARIOUS FACTORS THAT IT HAS AT IT'S

19 DISPOSAL TO REDUCE THAT SENTENCE FURTHER.

20         ONCE THE FRAUD CAME TO LIGHT, MR. LIVESAY WAS

21 EXTREMELY COOPERATIVE.  THAT WAS THE BASIS FOR THE

22 GOVERNMENT'S 5K MOTION.  HE DID EVERYTHING THE GOVERNMENT

23 ASKED OF HIM.  HE PROVIDED, INDEED, SUBSTANTIAL ASSISTANCE

24 WHENEVER ASKED, WHEREVER HE WAS ASKED TO DO SO.  HE, OF

25 COURSE, AS THE COURT KNOWS, TESTIFIED AT LENGTH FOR FOUR

1    DAYS AT THE SCRUSHY TRIAL, ALSO TESTIFIED ON THE

2    GOVERNMENT'S BEHALF AT THE SONNY CRUMPLER TRIAL LATER ON

3    IN 2005.  AGAIN, HIS ASSISTANCE WAS FULL AND COMPLETE AND

4    TRUTHFUL AND, FOR THAT REASON, THE GOVERNMENT, IN ESSENCE,

5    RENEWED THE 5K MOTION ORALLY AT THE SECOND SENTENCING AND

6    THEN IN WRITING.  THE MOST RECENT TIME TO DOCUMENT THAT

7    FACT THAT BECAUSE OF THE ADDITIONAL SUBSTANTIAL

8    ASSISTANCE, THE GOVERNMENT'S RECOMMENDATION OF A SENTENCE,

9    A FURTHER DOWNWARD DEPARTURE TO THE NUMBER OF, THE FIGURE

10   OF 20 MONTHS.

11        NOW, THE 5K MOTION FROM THE MINIMUM GUIDELINE OF

12   78 MONTHS IS ROUGHLY A 75 PERCENT REDUCTION, WHICH I

13   BELIEVE IS A SIGNIFICANT REDUCTION AS MR. SPINA NOTED.

14   AND IT'S CERTAINLY WELL DESERVING.  MR. LIVESAY IS INDEED

15   WELL DESERVING OF THAT REDUCTION.  BUT THE POINT BEING

16   HERE IS THAT THAT SUBSTANTIAL ASSISTANCE DOES NOT WIPE THE

17   SLATE CLEAN.  IT DOES NOT LESSEN INCREDIBLE DAMAGE THAT

18   WAS DONE, IT DOES NOT REPAIR THE FINANCIAL AND

19   PSYCHOLOGICAL DAMAGE THAT WAS DONE TO THE THOUSANDS OF

20   INVESTORS WHO LOST MILLIONS OF DOLLARS; MANY LOST THEIR

21   LIFE SAVINGS.  DOESN'T LESSEN THE FACT THAT HUNDREDS OF

22   EMPLOYEES OF HEALTHSOUTH LOST THEIR JOBS AS A RESULT OF

23   FRAUD ONCE IT BECAME KNOWN TO THE PUBLIC.  IT DOESN'T WIPE

24   THE SLATE CLEAN.

25        WITH REGARD TO THE OTHER FACTORS, AS THE COURT

1  KNOWS, THOSE FIVE FACTORS THAT IS REQUIRED TO REVIEW IN

2  DETERMINING HOW MUCH IT DOWNWARD DEPARTS ON THE BASIS OF

3  THE 5KS, ALL THOSE RELEVANT TO THE DEFENDANT'S ASSISTANCE.

4  AGAIN, THE DEFENDANT PROVIDED SUBSTANTIAL ASSISTANCE BUT

5  THAT DOES NOT, AGAIN, WIPE THE SLATE CLEAN.

6           THE COURT IS ALSO REQUIRED TO CONSIDER THE

7  FACTORS ENUMERATED UNDER 18 U.S.C. 3553(A).  I BELIEVE

8  THERE WERE SEVEN LISTED, THREE THAT I BELIEVE ARE MOST

9  PERTINENT IN THIS CASE.  ONE, THE NATURE AND CIRCUMSTANCES

10 OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE

11 DEFENDANT.  TWO, THE NEED FOR THE SENTENCE IMPOSED TO

12 REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT

13 FOR THE LAW AND TO PROVIDE A JUST PUNISHMENT FOR THE

14 OFFENSE, TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT

15 AND THEN, FINALLY, IF NEEDED, TO AVOID UNWARRANTED

16 SENTENCING DISPARITIES AMONG DEFENDANTS IN A SIMILAR

17 SITUATION.

18          YOUR HONOR, AGAIN, THE SCOPE OF THIS CRIME IS

19 STILL DIFFICULT FOR PEOPLE TO GRASP.  THE COMPANY

20 INVESTORS ARE STILL SUFFERING THE REPERCUSSIONS.  THIS

21 TYPE OF CRIME IS A SERIOUS CRIME AND WARRANTS A

22 SIGNIFICANT PUNISHMENT.  AWARDING THE DEFENDANT PROBATION

23 IN A 1.4 BILLION DOLLAR FRAUD WHERE HE WAS ACTIVELY

24 INVOLVED AT THE HEART OF IT, IN FURTHERING IT, IN

25 SUPERVISING OTHERS TO DO IT, IS NOT A JUST PUNISHMENT.

1          ONE OF THE ELEMENTS I TOUCHED ON, SENTENCING

2    DISPARITIES, FOR INSTANCE, EMERY HARRIS, WHO WAS

3    PREVIOUSLY SENTENCED TO A FIVE MONTH TERM OF IMPRISONMENT,

4    DID THE SAME WORK AS MR. LIVESAY.  IN FACT, MR. LIVESAY

5    SUPERVISED EMORY HARRIS.

6          THE COURT:  HE SUPERVISED EMERY HARRIS UNTIL

7    NOVEMBER OF 1999.

8          MR. INGRAM:  CORRECT.

9          THE COURT:  BUT EMERY HARRIS REMAINED IN THE

10   HEART OF THE FRAUDULENT ACTIVITY, IF I AM NOT MISTAKEN,

11   UNTIL MARCH OF 2003; CORRECT?

12         MR. INGRAM:  THAT IS CORRECT.  YOUR HONOR, WHICH

13   BRINGS ME TO ANOTHER POINT.  ONE, AN ARGUMENT THAT MR.

14   SPINA HAS MADE ON BEHALF OF MR. LIVESAY IS THAT

15   MR. LIVESAY REPUDIATED, WITHDREW FROM THE CONSPIRACY.  IN

16   A LEGAL SENSE, HE DID NOT DO THAT.

17         THE COURT:  I AM AWARE HE DID NOT COMPLY WITH ALL

18   OF THE LEGAL --

19         MR. INGRAM:  CORRECT.

20         THE COURT:  -- REQUIREMENTS TO BE CONSIDERED TO

21   LEGALLY HAVE WITHDRAWN.  BUT AFTER NOVEMBER 1999, IT'S MY

22   RECOLLECTION THAT HE DID NOT ACTIVELY PARTICIPATE IN ANY

23   OF THE FRAUDULENT ACTIVITY.

24         MR. INGRAM:  NO, MA'AM, NOR DID HE DO ANYTHING TO

25   BRING THE FRAUD TO LIGHT.  ALL MR. LIVESAY DID, FRANKLY,

1  WAS WALK UP THE HALL TO GET ANOTHER JOB SO HE DIDN'T HAVE

2  TO DEAL WITH THE DAY-TO-DAY CONDUCT OF A MASSIVE MULTI-

3  BILLION DOLLAR FRAUD.  HE DIDN'T LEAVE THE COMPANY.

4            THE COURT:  RIGHT.

5            MR. INGRAM:  HE DIDN'T TURN ANYONE IN, DIDN'T

6  REPORT IT TO REGULATORS.  HE DIDN'T DO NOTHING.  HE JUST

7  DIDN'T WANT TO BE INVOLVED ANY MORE AND HE WENT UP THE

8  HALL.  THAT'S NOT WALKING AWAY.

9            THE COURT:  BUT MR. HARRIS REMAINED IN THE THICK

10  OF IT INVOLVED IN THE ACTIVE, DAY-TO-DAY ENTRY OF

11  FRAUDULENT INFORMATION ON TO THE HEALTHSOUTH BOOKS, RIGHT?

12            MR. INGRAM:  HE JUST CONTINUED DOING THE WORK

13  THAT MR. LIVESAY HAD DONE PRIOR.

14            THE COURT:  WITH A PROMOTION OR TWO, RIGHT?  HE

15  WAS PROMOTED TO ASSISTANT CONTROLLER AND VICE-PRESIDENT?

16            MR. INGRAM:  ARE YOU DISCUSSING MR. HARRIS?

17            THE COURT:  I AM TALKING ABOUT MR. HARRIS.

18            MR. INGRAM:  YOUR HONOR, MY MEMORY FAILS ME AS

19  EXACTLY WHAT, IF ANY, PROMOTIONS HE RECEIVED.

20            THE COURT:  HE DID; ALL RIGHT.

21            MR. INGRAM:  VERY WELL.

22            THE COURT:  ALSO, KAY MORGAN HAD WORKED UNDER

23  MR. LIVESAY, CORRECT?

24            MR. INGRAM:  CORRECT.

25            THE COURT:  AND AFTER MR. LIVESAY LEFT THE

1  ACCOUNTING DEPARTMENT IN NOVEMBER OF 1999, KAY MORGAN ALSO

2  WAS PROMOTED TO ASSISTANT CONTROLLER AND CONTINUED

3  INVOLVEMENT IN THE FRAUDULENT ACTIVITY, I ALSO BELIEVE,

4  UNTIL MARCH OF 2003; CORRECT?

5          MR. INGRAM:  I BELIEVE THAT'S CORRECT, YOUR

6  HONOR.

7          THE COURT:  OKAY.

8          MR. INGRAM:  ALL THOSE INDIVIDUALS CONTINUED

9  WORKING AT HEALTHSOUTH, WHETHER THEY WERE IN THE

10 ACCOUNTING DEPARTMENT OR UP THE HALL IN INFORMATION

11 TECHNOLOGY.

12         THE COURT:  MR. LIVESAY WAS THE ONLY ONE WHO WENT

13 TO INFORMATION TECHNOLOGY, WASN'T HE?

14         MR. INGRAM:  THAT'S CORRECT, YOUR HONOR.  MY

15 POINT BEING THAT MR. LIVESAY, EVEN THOUGH HE WALKED AWAY

16 FROM THE ACCOUNTING DEPARTMENT, DID NOT DO ANYTHING TO

17 REPUDIATE THE CONSPIRACY OR TO WITHDRAW IN A FORMAL LEGAL

18 SENSE.  HE JUST ELECTED NOT TO BE INVOLVED ANY MORE AND

19 SIMPLY WENT DOWN THE HALL TO ANOTHER JOB.  SO TO THAT --

20         THE COURT:  AND YOU ARE SAYING THAT DISTANCING

21 HIMSELF FROM THE DAY-TO-DAY FRAUDULENT ACTIVITIES DOES NOT

22 DISTINGUISH HIM FROM MR. HARRIS AND MS. MORGAN, WHO

23 CONTINUED TO PARTICIPATE IN THE DAY-TO-DAY ENTRY OF

24 FRAUDULENT INFORMATION INTO THE ACCOUNTING RECORDS OF

25 HEALTHSOUTH?

1          MR. INGRAM:  THAT IS A DISCONTINUATION WITHOUT A

2    DIFFERENCE, YOUR HONOR.  EVERY ONE OF THOSE INDIVIDUALS

3    WAS SIGNIFICANTLY INVOLVED IN THE CONDUCT OF THE FRAUD.

4    THE FACT --

5          THE COURT:  SO THE COURT SHOULD NOT CONSIDER THE

6    LENGTH OF TIME THAT SOMEONE WAS INVOLVED IN THE FRAUDULENT

7    ACTIVITY AT ALL?  THAT DOESN'T MAKE ANY DIFFERENCE?

8          MR. INGRAM:  NO, THE COURT SHOULD EXAMINE THE

9    LENGTH OF INVOLVEMENT, THE EXTENT OF THE INVOLVEMENT, ALL

10   THE VARIOUS ASPECTS THAT SURROUND THE PERSON'S EMPLOYMENT.

11   THE PROFIT THAT WAS MADE AS A RESULT OF THEIR KNOWLEDGE

12   AND PARTICIPATION IN THE FRAUD, ALL THESE FACTORS SHOULD

13   BE TAKEN INTO ACCOUNT IN DECIDING WHAT AN APPROPRIATE

14   SENTENCE IS.  AND MY POINT, YOUR HONOR, IS THAT ALTHOUGH

15   MR. LIVESAY COOPERATED, HE DID NOT COME FORWARD UNTIL THE

16   FRAUD WAS REVEALED.

17        SO IN CLOSING, BASICALLY, YOUR HONOR, QUITE FRANKLY,

18   TO SENTENCE AN INDIVIDUAL TO PROBATION UNDER THIS SET OF

19   FACTS IS, IN ESSENCE, A SLAP IN THE FACE TO ALL OF THE

20   INVESTORS ACROSS THE COUNTRY WHO PUT THEIR FAITH AND THEIR

21   HARD-EARNED MONEY INTO HEALTHSOUTH AND LOST IT AS A RESULT

22   OF THE FRAUD THAT MR. LIVESAY AND OTHER INDIVIDUALS

23   PARTICIPATED IN.

24        WHETHER MR. LIVESAY KNEW IT WAS FALSE, HE PROFITED

25   FROM IT AND HE SIMPLY JUST CONTINUED TO GO ALONG, TO

1  CONDUCT THE FRAUD AND FURTHER HIS PURPOSES.  IT'S A SLAP

2  IN THE FACE, YOUR HONOR, ALSO TO THE EMPLOYEES OF

3  HEALTHSOUTH WHO LOST THEIR JOBS BECAUSE OF THE FRAUD.

4  IT'S, QUITE FRANKLY, A SLAP IN THE FACE TO THE CITIZENS OF

5  THIS DISTRICT WHO MAY BELIEVE THAT INDIVIDUALS WHO ARE

6  SENTENCED IN WHITE COLLAR TYPE OFFENSES SIMPLY BECAUSE

7  THEY MAKE A GOOD A SHOWING IN COURT AND BECAUSE OF THE

8  NATURE OF THEIR OFFENSE, THEY ARE ENTITLED TO PROBATION

9  AND WALK OUT OF THE COURTHOUSE WITHOUT BEING PUNISHED

10 APPROPRIATELY FOR THE NATURE OF THEIR CRIME.

11      THIS FINANCIAL CRIME CAN BE AS BAD AND, IN FACT, IN

12 THIS CASE, I BELIEVE MAY HAVE BEEN WORSE THAN OTHER TYPES

13 OF CRIMES THAT THIS COURT DEALS WITH ON A REGULAR BASIS.

14 AGAIN, BECAUSE OF THE SIGNIFICANCE, THE MASSIVENESS OF

15 THIS OFFENSE, A TERM OF IMPRISONMENT IS NECESSARY AND

16 APPROPRIATE IN THIS CASE TO MEET THE OBJECTIVES OF 3553.

17 THANK YOU, YOUR HONOR.

18      THE COURT:  THANK YOU, MR. INGRAM.  MR. SPINA?

19      MR. SPINA:  WELL, I HAVE ONE WORD TO SAY BUT I

20 KNOW I AM NOT GOING TO STOP AT THE ONE WORD.  BUT THE ONE

21 WORD --

22      THE COURT:  WHEN YOU STARTED SAYING ONE WORD, I

23 KNEW YOU WOULDN'T BE STOPPING AT ONE WORD EITHER, MR.

24 SPINA.

25      MR. SPINA:  THE ONE WORD IS BOTTS.  RICHARD

1  BOTTS.  SAME LEVEL, DIRECTOR OF TAXATION, REPORTED

2  DIRECTLY TO BILL OWENS, WORKED THROUGHOUT THE ENTIRE

3  FRAUDULENT PERIOD, SENTENCED TO 60 MONTHS OF PROBATION.

4  APPEALED, REVERSED, SENTENCED TO 60 MONTHS PROBATION AGAIN

5  AND THE GOVERNMENT DID NOT APPEAL.  HOW CAN THEY SAY THE

6  THINGS THEY ARE SAYING IN HERE TODAY WITH THAT GLARING AT

7  THEIR INCONSISTENT AND INSINCERE WORDS?

8        NOW, THE REST OF MY WORDS.  I DIDN'T JUMP TO

9  LEVEL 14 -- HE JUMPED TO LEVEL 14.  WHY SHOULD I TALK

10 ABOUT HOW WE GOT FROM 28 TO 14 WHEN I AM ALREADY AT 14?  I

11 DIDN'T GLOSS OVER ANYTHING.  I AM NOT TRYING TO DOWNPLAY

12 THE EXTENSIVENESS, THE MASSIVENESS OF THIS FRAUD.  HE IS A

13 SIGNIFICANT COG.  HE IS SO SIGNIFICANT THAT WHEN HE LEFT

14 IT CONTINUED FOR THREE AND A HALF MORE YEARS.  HE IS THAT

15 SIGNIFICANT.

16        HE IS A DISTINCTION WITH A DIFFERENCE.  THOSE

17 AROUND HIM KNEW WHY HE WAS LEAVING.  THEY DIDN'T LEAVE.

18 THE TWO PEOPLE YOU TALKED ABOUT WERE KAY MORGAN,

19 PROBATION, NO OBJECTION, NO APPEAL.  WHERE IS THE

20 DISPARITY?  THE DISPARITY IS IN WHAT HE HAS DONE, THOUGH,

21 THAT IS THE DISPARITY.  AND ALTHOUGH NOT APPROPRIATE

22 FODDER FOR 5K, BUT SINCE THEY ARE RECOMMENDING A LEVEL 14

23 AND I AM ASKING THE COURT TO GO MAYBE TWO MORE LEVELS,

24 SINCE HIS TESTIMONY HE HAS CONSTANTLY DEALT WITH THE CIVIL

25 SUIT PEOPLE.

```
 1            WHY IS THAT IMPORTANT?  IT'S NOT A 5K TECHNICALLY

 2  BUT IT'S HELPING THESE VICTIMS, THESE PEOPLE THAT HAVE

 3  LOST THEIR LIFE SAVINGS THAT HE CONTINUES TO WANT YOU TO

 4  BERATE.  THEY NEED KEN LIVESAY.  KEN LIVESAY HAS HELPED

 5  THEM, NOT HURT THEM.  HIS ACTIONS HURT THEM.  HE IS TRYING

 6  TO RIGHT THE WRONG.  I AM JUST --

 7            THE COURT:  AND ON THAT POINT, I KNOW IT WAS NOT

 8  THE ONLY FACTOR BUT CERTAINLY MR. LIVESAY'S COOPERATION

 9  WITH THE PLAINTIFF'S COUNSEL IN THE HEALTHSOUTH LITIGATION

10  HELPED TO BRING ABOUT A SIGNIFICANT SETTLEMENT WITH

11  HEALTHSOUTH AND SOME OF THE OTHER DEFENDANTS IN THAT CASE

12  FOR THE BENEFIT OF THE SHAREHOLDERS, CORRECT?

13            MR. SPINA:  THAT IS CORRECT, JUDGE.  AND THE

14  JUDGE WAS CORRECT -- JUDGE, YOU WERE CORRECT -- SORRY, NOT

15  TALKING ABOUT YOU IN THE THIRD PERSON -- WHEN YOU

16  SUGGESTED EMERY HARRIS HAD RECEIVED A PROMOTION, THOSE

17  WERE ACCURATE FACTS.  I DIDN'T KNOW WHETHER YOU WERE

18  ASKING IF THEY WERE BUT MR. LIVESAY RECALLS THAT --

19            THE COURT:  HE AND KAY MORGAN BOTH, AM I CORRECT

20  ON THAT?

21            THE DEFENDANT:  YES, MA'AM.

22            MR. SPINA:  YES.

23            THE COURT:  AND THEY BOTH STAYED WITH THE COMPANY

24  IN THE ACCOUNTING DEPARTMENT UNTIL THE FRAUD WAS DISCLOSED

25  IN MARCH OF 2003?
```

1        THE DEFENDANT:  YES, MA'AM.

2        MR. SPINA:  SO THAT'S LIKE FOUR YEARS MORE.  WHEN

3   MR. LIVESAY HERE WAS TRYING TO DISTANCE HIMSELF.  AND HIS

4   DISTANCING DIDN'T HAPPEN LIKE I AM NOT GOING TO GO THERE

5   ANY MORE.  IT WAS THE PRODUCT OF HIS CONTINUED RESISTANCE

6   TO DO THE THINGS THEY WERE ASKING HIM TO DO THAT

7   ULTIMATELY RESULTED IN "I AM NOT GOING TO DO IT ANY MORE."

8   THEY TRIED TO GET HIM BACK THREE TIMES, I AM SURE

9   SPRINKLING IT WITH INCENTIVES.  EACH TIME HE SAID NO,

10  THANKS, NOT GOING BACK THERE, NOT GOING TO DO IT.  HE

11  DESERVES WHAT HE GOT AND THEY DESERVE TO LEAVE HIM ALONE.

12        THEY TALK ABOUT -- THEY DON'T EVEN PAY ANY

13  ATTENTION TO GALL.  SO I WOULD SAY -- AND I LOVE HUMOR,

14  BECAUSE HUMOR HAS SAVED ME FROM THE STUFF I DEAL WITH, BUT

15  WHAT THEY NEED IS LESS GALL, THAT'S WHAT THEY NEED.

16        THE COURT:  THANK YOU, MR. SPINA.  MR. INGRAM, IS

17  THERE ANYTHING YOU WOULD LIKE -- WOULD YOU LIKE A REBUTTAL

18  OPPORTUNITY?

19        MR. INGRAM:  YES, YOUR HONOR, I WOULD LOVE TO.

20        THE COURT:  SPEAKING OF GALL, AND I AM TALKING

21  ABOUT THE CASE, NOT THE OTHER KIND THAT MR. SPINA REFERRED

22  TO, AS I READ GALL, I SEE A WHOLE LOT OF SIMILARITIES TO

23  THIS CASE.  THE DISTRICT COURT JUDGE IN GALL PLACED A LOT

24  OF WEIGHT AND GAVE A LOT OF CONSIDERATION TO THE FACT THAT

25  THE DEFENDANT THERE, ALTHOUGH NOT A LEGAL WITHDRAWAL, HAD,

1  IN FACT, CEASED PARTICIPATING IN THE CONSPIRACY BEFORE IT

2  WAS UNCOVERED.  AND THE SUPREME COURT SEEMED TO SAY THAT

3  THE DISTRICT COURT WAS WITHIN ITS DISCRETION IN GIVING

4  SIGNIFICANT WEIGHT TO THAT FACT.  SO WHY SHOULD I NOT

5  LIKEWISE GIVE CONSIDERABLE WEIGHT TO THE FACT THAT THAT

6  MAN, MR. LIVESAY, CEASED ACTIVE INVOLVEMENT IN THE FRAUD

7  IN 1999, THREE AND A HALF YEARS BEFORE IT WAS UNCOVERED?

8      MR. INGRAM:  YOUR HONOR, I AM NOT SURE I AM

9  FOLLOWING THE COURT'S LOGIC.  IF I FOLLOW YOU CORRECTLY,

10  MAKING THE POINT THAT BECAUSE MR. LIVESAY WALKED AWAY FROM

11  THE FRAUD, AND I WILL USE THAT TERM LOOSELY BY WALKING

12  DOWN THE HALL, HE SOMEHOW IS NOW ABSOLVED FROM ANY

13  CRIMINAL RESPONSIBILITY.

14      THE COURT:  NO, NO, I AM NOT SAYING HE IS

15  ABSOLVED FROM ANY CRIMINAL RESPONSIBILITY.  BUT AS THE

16  DISTRICT COURT IN GALL DID, WHY SHOULD I NOT GIVE

17  SUBSTANTIAL WEIGHT TO THAT FACT?  YOU'RE SEEMING TO SAY

18  THAT IT SHOULD MAKE NO DIFFERENCE --

19      MR. INGRAM:  NO, YOUR HONOR.

20      THE COURT:   -- BECAUSE THE FRAUD CONTINUED AND

21  PEOPLE WERE HURT AND THINGS WERE DONE, AND YOU ARE ASKING

22  ME TO IMPOSE A HIGHER SENTENCE ON HIM THAN ON THE OTHER

23  PEOPLE AT THE SAME LEVEL OF FRAUD WHO CONTINUED IN THE

24  FRAUD TO ITS VERY END.

25      MR. INGRAM:  NO, YOUR HONOR, BECAUSE, ONE, I

1  DISAGREE WITH THE COURT BECAUSE MR. LIVESAY WAS NOT AT THE

2  SAME LEVEL.  HAD HE, IN FACT, SUPERVISED MR. HARRIS,

3  SUPERVISED --

4         THE COURT:  BUT MR. HARRIS ROSE TO THAT SAME

5  LEVEL.  HE BECAME ASSISTANT CONTROLLER, THE SAME LEVEL

6  THAT MR. LIVESAY WAS AT WHEN HE WAS PARTICIPATING IN THE

7  FRAUD.

8         MR. INGRAM:  BUT THAT DOESN'T CHANGE ANYTHING

9  ABOUT WHAT MR. LIVESAY DID, YOUR HONOR.  WHILE HE WAS IN

10 PLACE CONDUCTING THE FRAUD, ORCHESTRATING, BEING AN

11 ARCHITECT OF THE FRAUD AND SUPERVISING OTHERS TO IMPLEMENT

12 THE NUMBERS, THE FALLS NAMES THAT HE HAD CREATED, THE FACT

13 THAT HE HAS ONE FROM A LEVEL STANDPOINT, THERE IS NO

14 WITHDRAWAL FROM THE CONSPIRACY.  AND AS A PRACTICAL

15 MATTER, THE FACT THAT HE WALKED DOWN THE HALL AND JUST

16 SAID HE DIDN'T WANT TO PLAY ANY MORE WITH THE PEOPLE

17 CONDUCTING THE FRAUD I THINK WARRANTS SOME CONSIDERATION

18 BY THE COURT.  BUT, FRANKLY, NOT A GREAT DEAL OF

19 CONSIDERATION BY THE COURT.  HE DID NOTHING TO STOP THE

20 FRAUD, HE DID NOTHING TO UNDO THE FRAUD.  HE SIMPLY JUST

21 DIDN'T WANT TO BE INVOLVED ANY MORE.  HE DOESN'T HAVE THE

22 STOMACH TO BE INVOLVED IN THE FRAUD MY MORE AFTER THREE

23 AND A HALF YEARS, AFTER HAD HE MADE APPROXIMATELY CLOSE TO

24 THREE MILLION DOLLARS WHEN YOU ADD UP ALL THE BONUSES AND

25 STOCK OPTIONS RECEIVED BY BEING A GOOD SOLDIER AND

1  CONTINUING TO SEE THE FRAUD ADVANCE THE PURPOSES OF

2  HEALTHSOUTH BY FALSELY INFLATING IT'S NUMBERS ON WALL

3  STREET.

4          THE COURT IS CERTAINLY ENTITLED TO GIVE IT SOME

5  DISCRETION BUT THE SENTENCE THAT THE DISTRICT COURT

6  IMPOSES IS NOT UNFETTERED, YOUR HONOR.  THE 11TH CIRCUIT

7  HAS MADE IT QUITE CLEAR IN THIS CASE AND THE OTHER

8  HEALTHSOUTH CASES THAT FROM THIS SCOPE OF A CRIME, THIS

9  MASSIVE A FRAUD IS VERY DIFFICULT TO RECONCILE AWARDING

10 PROBATION TO THIS DEFENDANT, GIVEN WHAT HE DID, WHAT HE

11 KNEW, HOW HE PROFITED FROM IT, WHEN YOU LOOK AT THE

12 FACTORS THAT WERE ENUMERATED IN 3553(A).

13         TO PROMOTE RESPECT FOR THE LAW AND TO AWARD THIS

14 DEFENDANT PROBATION FOR THREE AND HALF YEARS AT THE HEART

15 OF A MASSIVE FRAUD SUCH AS THE ONE AT HEALTHSOUTH IS NOT

16 DOING JUSTICE TO THE SYSTEM.  AND, QUITE FRANKLY, IS A

17 SLAP TO EVERY HONEST, HARD-WORKING CITIZEN IN THIS

18 DISTRICT WHO LOOKS TO THIS COURT TO SEE THAT THE LAWS ARE

19 ADMINISTERED FAIRLY AND THE PEOPLE PAY FOR THEIR CRIMES.

20 TO IMPOSE A SENTENCE OF PROBATION IN THIS CASE IS NOT WHAT

21 3553(A) CALLS FOR, AND I THINK THE ELEVENTH CIRCUIT HAS

22 MADE THAT PRETTY CLEAR IN ITS PREVIOUS OPINION IS THAT

23 SUCH A SENTENCE IS VERY DIFFICULT, AT BEST, TO RECONCILE

24 WITH WHAT THE LAW IS SUPPOSED TO DO.

25         THE COURT:  WHAT THE ELEVENTH CIRCUIT SAID, AT

1   LEAST IN LIVESAY THREE, WHICH IS THE ONE THAT'S BINDING AT

2   THIS TIME, WAS THAT THERE WERE PROCEDURAL ERRORS IN THE

3   PRONOUNCEMENT OF THE SENTENCE AND THAT THERE WAS NOT A

4   SUFFICIENT EXPLANATION ON THE RECORD FOR THE JUDGE'S

5   DECISION TO IMPOSE PROBATION IN HIS CASE.

6           MR. SPINA, YOU LOOK LIKE YOU ARE ABOUT TO JUMP

7   OUT OF YOUR SEAT.

8           MR. SPINA:  THAT'S WHAT THEY SAID, BUT I'VE GOT

9   TO SAY SOMETHING ELSE.  ARE YOU READY?

10          THE COURT:  OKAY.

11          MR. SPINA:  IT'S THE WORD AGAIN.  BOTTS.

12  DIRECTOR OF TAXATION, FILED TAX RETURNS, INCLUDED IN THE

13  TAX RETURNS OVERSTATED EARNINGS.  THE RESULT OF WHICH

14  CAUSED HEALTHSOUTH TO PAY MORE TAX THAN THEY SHOULD HAVE

15  PAID.  CONTINUED THE FRAUD.  STARTED OUT AS A LEVEL 38.

16          THE COURT:  WAS MR. BOTTS INVOLVED IN 2002?

17          MR. SPINA:  HE WAS THERE THROUGHOUT, TILL THE

18  END.

19          THE COURT:  SO AFTER SARBANES-OXLEY?

20          MR. SPINA:  THROUGH THE END.

21          THE COURT:  THROUGH MCCAIN --

22          MR. SPINA:  YES.  HOW CAN HE SAY THESE THINGS?

23  THEY DIDN'T APPEAL THE PROBATION SENTENCE FOR MR. BOTTS

24  AND YET WE ARE TALKING ABOUT THESE POOR, HARD WORKING

25  PEOPLE LIKE -- IT SEEMS SO OBVIOUS TO ME.  PLEASE TELL ME

1   I AM NOT ON ANOTHER PLANET SOMEWHERE.  THIS JUST SEEMS SO

2   PLAIN TO ME WHAT'S HAPPENING HERE.  AND HERE AGAIN, I

3   REALIZE WE'RE ONLY TALKING ABOUT FOUR LEVELS.  WE ARE NOT

4   TALKING ABOUT SOME MASSIVE JUMP IN THE GUIDELINES.  THAT'S

5   ALL.

6           THE COURT:  THANK YOU, MR. SPINA.

7           MR. INGRAM:  YOUR HONOR, MAY I RESPOND TO THAT

8   JUST ONE THING?

9           THE COURT:  ALL RIGHT.

10          MR. INGRAM:  I WOULD LIKE TO BRING TO THE COURT'S

11  ATTENTION, I THINK MR. SPINA, AND THE COURT HAD BEEN

12  MAKING MUCH OF THE FACT THAT MR. LIVESAY, IF YOU WILL, IN

13  A SENSE, IN A VERY LOOSE SENSE, LEFT THE CONSPIRACY WHEN

14  HE WENT TO THE I.T. DEPARTMENT INSTEAD OF -- HE STILL

15  REMAINED INVOLVED IN THE FRAUD, THERE WERE PEOPLE

16  CONSULTING WITH HIM.  AFTER THAT POINT IN TIME WHEN HE

17  LEFT OTHER PEOPLE WHO STILL PARTICIPATED IN THE FRAUD

18  APPROACHED HIM WITH QUESTIONS, ASKED HIM TO COME BACK.  SO

19  TO SAY THAT HE WAS TOTALLY REMOVED FROM THE FRAUD EVEN

20  AFTER HE LEFT IN 1999 IS NOT TOTALLY ACCURATE.  THAT WAS,

21  THAT CAME OUT IN MS. LIVESAY'S TESTIMONY DURING THE

22  CRUMPLER TRIAL THAT PEOPLE CONTINUED TO APPROACH HIM AND

23  ASK QUESTIONS.

24          THE COURT:  AND ASKED HIM TO COME BACK AND HE

25  REFUSED TO RETURN.  I DON'T RECALL ANYTHING FROM MR.

1  CRUMPLER'S TESTIMONY.  MY MEMORY IS NOT THE BEST IN THE

2  WORLD.  IT'S BEEN A WHILE SINCE I HAVE REVIEWED THAT

3  TESTIMONY, BUT I DIDN'T RECALL THAT HE CONTINUED TO

4  PROVIDE ADVICE ABOUT FRAUD.  I RECALL THEY ASKED HIM TO

5  COME BACK AND HE REFUSED.

6        MR. SPINA:  YOUR HONOR'S RECOLLECTION IS

7  ACCURATE.

8        MR. INGRAM:  FOR WHAT IT'S WORTH, YOUR HONOR,

9  PERHAPS WE DO NOT HAVE IT IN A FORMAL PACKAGE, BUT I HAVE

10 THE TESTIMONY OF MR. LIVESAY FROM THE CRUMPLER TRIAL WHICH

11 I WOULD BE HAPPY TO OFFER INTO EVIDENCE FOR THE COURT'S

12 CONSIDERATION.

13        THE COURT:  CAN YOU POINT OUT TO ME SPECIFIC

14 STATEMENTS TO WHICH YOU WERE REFERRING?

15        MR. INGRAM:  I DON'T KNOW THAT I AM ABLE TO DO

16 THAT ON THE SPOT, YOUR HONOR, WITHOUT DELAYING THE

17 PROCEEDINGS.

18        THE COURT:  THEN WE'LL MOVE FORWARD.  THE FIRST

19 MATTER THAT I NEED TO TAKE INTO CONSIDERATION IS THE

20 GOVERNMENT'S MOTION TO DEPART.  AND AS I HAVE INDICATED, I

21 INTEND TO GRANT IT.  THE QUESTION IS HOW FAR SHOULD I GO

22 IN A DEPARTURE?  I HAVE CONSIDERED THE FACTORS CONCERNING

23 DEPARTURE FOUND AT U.S.S.G. SECTION 5K1.1 AND

24 SPECIFICALLY, I AM RELYING ON THE FOLLOWING FACTORS.

25        FIRST, THE COURT'S EVALUATION OF THE SIGNIFICANCE

1    AND USEFULNESS OF THE DEFENDANT'S ASSISTANCE, TAKING INTO

2    CONSIDERATION THE GOVERNMENT'S EVALUATION OF THE

3    ASSISTANCE RENDERED.  I HAVE RELIED ON A DESCRIPTION OF

4    THE DEFENDANT'S ASSISTANCE FOUND IN THE GOVERNMENT'S

5    MOTION FOR DOWNWARD DEPARTURE.  THE GOVERNMENT INDICATED

6    THAT THE DEFENDANT HAS PROVIDED INVALUABLE ASSISTANCE IN

7    HELPING THE FORENSIC AUDITOR DISCOVER IN AN EXPEDITIOUS

8    MANNER THE VERY WAYS IN WHICH THE MASSIVE FRAUD AT

9    HEALTHSOUTH WAS CONDUCTED.  HE HAS PROVIDED A ROAD MAP FOR

10   THE WAY THE OFFICERS MANIPULATED THE COMPANY'S ACCOUNTS TO

11   GO PRESENT, WITH COMPLETELY FRAUDULENT OPERATING RESULTS.

12   HE EDUCATED INVESTIGATORS ABOUT THE VARIOUS METHODS THAT

13   HEALTHSOUTH AND ITS OFFICERS USED TO INFLATE ITS EARNINGS

14   AND TO HIDE THE FALSIFIED INCOME ON THE BALANCE SHEET.  HE

15   PROVIDED ESSENTIAL INFORMATION HOPING TO QUANTIFY THE

16   HUNDREDS OF MILLIONS OF DOLLARS IN FICTITIOUS INCOME WHICH

17   APPEARED ON HEALTHSOUTH'S FINANCIAL STATEMENTS.  I HAVE

18   ALSO CONSIDERED THE TRUTHFULNESS COMPLETENESS AND ANY

19   RELIABILITY OF ANY INFORMATION IN THE TESTIMONY PROVIDED

20   BY THE DEFENDANT.

21        THE GOVERNMENT'S INDICATED THAT THE DEFENDANT HAS

22   TRUTHFULLY AND COMPLETELY CONTESTED HIS MISDEEDS AND HAS

23   ALSO REVEALED WITHOUT HESITATION WHAT HE KNOWS ABOUT

24   PARTICIPATION OF OTHERS IN THE SCHEME.  IN ADDITION, THE

25   DEFENDANT TESTIFIED FOUR DAYS AT THE TRIAL OF RICHARD

1   SCRUSHY AND FOR TWO DAYS AT THE TRIAL OF SONNY CRUMPLER.

2          THE COURT HAS CONSIDERED THE NATURE AND EXTENT OF

3   THE DEFENDANT'S ASSISTANCE.  THE GOVERNMENT INDICATED THAT

4   THE DEFENDANT HAS BEEN AVAILABLE ON A CONTINUOUS AND

5   REGULAR BASIS AND HAS MET WHENEVER NEEDED ON AT LEAST TEN

6   OCCASIONS WITH VARIOUS AGENCIES OF THE UNITED STATES,

7   INCLUDING THE FBI, SECURITY AND EXCHANGE COMMISSION, THE

8   INTERNAL REVENUE SERVICE, AND THE DEPARTMENT OF HEALTH AND

9   HUMAN SERVICES.  THE DEFENDANT PROVIDED BOTH GENERAL AND

10  SPECIFIC INFORMATION WHICH HAS BEEN OF ASSISTANCE TO THE

11  INVESTIGATION.

12         THE INFORMATION PROVIDED BY THE DEFENDANT HAS

13  INCLUDED BOTH DIRECT EVIDENCE OF CONVERSATIONS WITH

14  INDIVIDUALS AS WELL AS CIRCUMSTANTIAL EVIDENCE OF OTHER

15  CO-CONSPIRATORS' KNOWLEDGE.  THE DEFENDANT PROVIDED THE

16  GOVERNMENT WITH DOCUMENTS WHICH HE MAINTAINED IN HIS

17  POSSESSION, SPECIFICALLY BECAUSE THEY WERE EVIDENCE OF THE

18  FRAUD AT HEALTHSOUTH.

19         THE COURT HAS ALSO CONSIDERED ANY INJURY SUFFERED

20  OR DANGER OR RISK OF INJURY TO THE DEFENDANT OR HIS FAMILY

21  RESULTING FROM HIS ASSISTANCE.  THE COURT IS NOT AWARE OF

22  ANY INJURY OR DANGER PER SE; HOWEVER, THE COURT DOES

23  RECOGNIZE THE EMOTIONAL INJURY AND PAIN IN PROVIDING

24  EVIDENCE AND TESTIMONY AGAINST FORMER COLLEAGUES AND

25  FRIENDS AND THE PRESSURES THAT ARISE FROM HAVING DONE SO.

1    ALSO, THE COURT HAS CONSIDERED THE TIMELINESS OF

2  THE DEFENDANT'S ASSISTANCE.  THE GOVERNMENT INDICATED THAT

3  THE DEFENDANT'S IMMEDIATE COOPERATION ALLOWED THE

4  HEALTHSOUTH CASE TO BE PROSECUTED, A PACE WHICH ON A

5  RELATIVE BASIS CONSTITUTES SWIFT AND EFFICIENT ENFORCEMENT

6  OF THE UNITED STATES CRIMINAL LAWS.  FURTHER, THE DETAILS

7  OF THE FRAUDULENT SCHEME WERE EXPOSED TO THE PUBLIC

8  SHORTLY AFTER DISCOVERY OF THE FRAUD DUE IN PART TO THE

9  DEFENDANT'S COOPERATION.  THE COURT CAN ALSO CONSIDER

10  OTHER FACTORS DEEMED APPROPRIATE TO THE COURT THAT RELATE

11  TO THE COOPERATION.

12    IN THIS CASE, THE COURT HAS HAD THE OPPORTUNITY

13  TO EVALUATE THE CREDIBILITY OF MR. LIVESAY'S TESTIMONY

14  ITSELF AT THE TRIAL OF RICHARD SCRUSHY.  THE COURT

15  REMEMBERS FOUR DAYS OF TESTIMONY THAT MR. LIVESAY GAVE AS

16  WELL AS -- IN OPEN COURT, AS WELL AS TESTIMONY IN

17  CHAMBERS.  AND THE COURT WAS PARTICULARLY IMPRESSED WITH

18  MR. LIVESAY'S CREDIBILITY.  HE DID NOT ATTEMPT TO OVER

19  REACH IN HIS TESTIMONY BUT SPOKE EARNESTLY OF MATTERS

20  WITHIN HIS OWN PERSONAL KNOWLEDGE.

21    I UNDERSTAND THAT THE GOVERNMENT'S RECOMMENDATION

22  IS THE DEFENDANT RECEIVE A SENTENCE OF 20 MONTHS WITH A

23  5K1.1 DEPARTURE.  THAT WOULD REQUIRE A DEPARTURE TO LEVEL

24  14.  HOWEVER, BASED ON THE GOVERNMENT'S OWN WORDS USED TO

25  DESCRIBE DEFENDANT'S COOPERATION AND WHICH I HAVE QUOTED

1  ABOVE AT SOME LENGTH AND ALSO MY OWN EVALUATION OF THE

2  DEFENDANT'S CREDIBILITY, I FIND SUCH A RECOMMENDATION

3  INADEQUATELY REPRESENTS THE DEFENDANT'S COOPERATION.

4          THEREFORE, BASED UPON THESE 5K1.1 FACTORS, I FIND

5  THAT A DEPARTURE SHOULD BE GRANTED AND I DEPART TO LEVEL

6  12, WHICH, WHEN COMBINED WITH CRIMINAL HISTORY CATEGORY I,

7  RESULTS IN A SENTENCING RANGE OF TEN TO 16 MONTH AND A

8  FINE RANGE OF $3,000 TO A MILLION DOLLARS.  HOWEVER, AS

9  YOU KNOW, AS A RESULT OF BOOKER, THE DECISION OF AN

10  APPROPRIATE SENTENCE DOES NOT REST HERE.  I AGREE WITH THE

11  GOVERNMENT THAT COOPERATION DOES NOT WIPE THE SLATE CLEAN

12  BUT A 5K MOTION DOES NOT END THE COURT'S INQUIRY INTO A

13  REASONABLE SENTENCE.  THE COURT IS CHARGED WITH IMPOSING A

14  SENTENCE THAT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY

15  TO MEET SENDING FACTORS FOUND AT SECTION 3553(A).

16          BEFORE PRONOUNCING SENTENCE IN THIS CASE, BASED

17  UPON THE GUIDELINE FACTORS AND THE DEFENDANT'S

18  COOPERATION, THE COURT MUST ALSO CONSIDER ALL OF THE

19  SENTENCING FACTORS FOUND AT 18 U.S.C. SECTION 3553(A).  I

20  HAVE CONSIDERED ALL OF THOSE FACTORS AND SPECIFICALLY RELY

21  ON THE FOLLOWING FACTORS IN DETERMINING THE APPROPRIATE

22  SENTENCE:  THE NATURE AND CIRCUMSTANCES OF THE OFFENSE.

23  THE COURT IS WELL AWARE OF THE MASSIVE FRAUD AT

24  HEALTHSOUTH AND THE IMPACT OF IT ON INNOCENT EMPLOYEES AND

25  INVESTIGATORS OF HEALTHSOUTH AND AGAIN ON BIRMINGHAM AS A

1  WHOLE.  I THINK MORE THAN ENOUGH HAS BEEN SAID ABOUT THE

2  MASSIVE FRAUD, BUT THIS MAN IS NOT THE ONLY PERSON

3  RESPONSIBLE FOR THAT FRAUD.

4       THE COURT ALSO HAS CONSIDERED THE HISTORY AND

5  CHARACTERISTICS OF THIS DEFENDANT.  BUT FOR HIS MISCONDUCT

6  AT HEALTHSOUTH, MR. LIVESAY HAS LIVED A LIFE ABOVE

7  REPROACH AND, SINCE HIS CONFESSION OF GUILT, HAS GIVEN

8  TESTIMONY IN THESE RELATED CASES.  HE ALSO HAS GIVEN

9  TESTIMONY, ACCORDING TO HIS WIFE, TO GOD'S RESTORATIVE

10 GRACE, AND THE GUIDELINES TAKE INTO ACCOUNT ALL THE

11 NEGATIVE THAT A DEFENDANT DOES THAT DOES NOT PROVIDE ANY

12 CONSIDERATION OR ROOM FOR CONSIDERATION OF THE POSITIVE

13 FACTS IN A DEFENDANT'S LIFE.  SO UNDER THE SENTENCING

14 FACTORS, THE COURT, HOWEVER, CAN AND SHOULD TAKE INTO

15 CONSIDERATION NOT JUST THE NEGATIVE BUT THE POSITIVE

16 CHARACTERISTICS OF A DEFENDANT.

17      THE COURT ALSO HAS CONSIDERED THE NATURE OF THE

18 SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE

19 OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE

20 JUST PUNISHMENT FOR THE OFFENSE.  THE GOVERNMENT SEEMS TO

21 BELIEVE THAT PROBATION NEVER IS JUST PUNISHMENT, AND I BEG

22 TO DIFFER.  THE UNITED STATES SUPREME COURT IN GALL

23 RECOGNIZED THAT IN APPROPRIATE CASES PROBATION CAN BE

24 PUNISHMENT AND IS, IN FACT, PUNISHMENT.

25      THE COURT, IN GALL, SPECIFICALLY NOTED THAT

1   PROBATION RATHER THAN AN ACT OF LENIENCY IS A SUBSTANTIAL
2   RESTRICTION OF FREEDOM.  THE SUPREME COURT NOTED THE
3   OFFENDERS ON PROBATION ARE NONETHELESS SUBJECT TO SEVERAL
4   CONDITIONS THAT SUBSTANTIALLY RESTRICT THEIR LIBERTY.
5   INHERENT IN THE VERY NATURE OF PROBATION IS THAT
6   PROBATIONERS DO NOT ENJOY THE ABSOLUTE LIBERTY TO WHICH
7   EVERY CITIZEN IS ENTITLED.  PROBATIONERS MAY NOT LEAVE THE
8   JUDICIAL DISTRICT, MOVE OR CHANGE JOBS WITHOUT NOTIFYING
9   AND, IN SOME CASES, IN RECEIVING PERMISSION FROM THEIR
10  PROBATION OFFICE OR THE COURT.  THEY MUST REPORT TO THE
11  PROBATION OFFICER FOR UNANNOUNCED VISITS TO THEIR HOMES,
12  REFRAIN FROM ASSOCIATING WITH ANY PERSON CONVICTED OF A
13  FELONY, ET CETERA.
14          SO TO SAY THAT THE ONLY FORM OF JUST PUNISHMENT
15  IN A CASE OF THIS NATURE IS IMPRISONMENT AVOIDS
16  RECOGNIZING THE REALITIES OF PROBATION.  IN ORDER TO
17  AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AGAIN,
18  INCARCERATION IS NOT THE ONLY FORM OF DETERRENCE.  I HAVE
19  CONSIDERED WHETHER THERE IS ANY NEED TO PROTECT THE PUBLIC
20  FROM FURTHER CRIMES OF THE DEFENDANT AND NO SUCH NEED
21  EXISTS IN THIS CASE BASED UPON MR. LIVESAY'S CHARACTER.
22          PROBABLY THE FACTOR THOUGH THAT I HAVE CONSIDERED
23  THE MOST AND AT GREATEST LENGTH IS THE NEED TO AVOID
24  UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH
25  SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR

1 CONDUCT.  NOW, LET ME SAY THAT IF I WERE IMPOSING SENTENCE

2 ON ALL OF THE PEOPLE WHO PLED GUILTY OR WHO WERE CONVICTED

3 TO THE FRAUD AT HEALTHSOUTH, I MIGHT HAVE COME UP WITH A

4 DIFFERENT STRUCTURING OF SENTENCES.  BUT I AM LEFT TO WORK

5 WITH NOT A CLEAN SLATE BUT THE SLATE OF THE SENTENCES THAT

6 HAVE PREVIOUSLY BEEN IMPOSED.  AND IN EVALUATING THOSE

7 OTHER SENTENCES, I HAVE DONE MY BEST TO EVALUATE THE

8 CONDUCT OF MR. LIVESAY AND COMPARE IT TO THE CONDUCT OF

9 THE OTHER DEFENDANTS WHO HAVE BEEN SENTENCED AND ALSO

10 COMPARE IT THEN TO THOSE SENTENCES.  THE GOVERNMENT IN

11 THIS CASE URGES THAT THE ONLY APPROPRIATE SENTENCE IS ONE

12 OF IMPRISONMENT AND, IN FACT, SEEKS A 20 MONTH PRISON

13 TERM.  SUCH A PRISON TERM, HOWEVER, WOULD PLACE

14 MR. LIVESAY IN THAT SAME CATEGORY WITH WESTON SMITH WHO

15 HAD SERVED AS C.F.O. AND WHO RECEIVED A 27 MONTH SENTENCE,

16 WITH MIKE MARTIN, ALSO A CF, WHO RECEIVED A 36 MONTH

17 SENTENCE, AND WOULD PLACE HIM ABOVE EMERY HARRIS WHO ROSE

18 TO THE LEVEL OF VICE-PRESIDENT AS WELL AS ASSISTANT

19 CONTROLLER, WHO COVERED THE FRAUD UNTIL ITS END IN 2003,

20 WHO RECEIVED A FIVE MONTH CUSTODIAL SENTENCE.

21        THE COURT ALSO NOTES WILLIAM OWENS, WHO SERVED IN

22 VARIOUS CAPACITIES FROM THE VERY BEGINNING OF THE FRAUD TO

23 ITS END, INCLUDING C.F.O. AND CEO, RECEIVED A FIVE YEAR

24 SENTENCE.  OWENS, MARTIN, SMITH, AARON BEING, MR. LIVESAY

25 AND OTHERS WERE ALL INVOLVED IN THE EARLY STAGES OF THE

1  ACCOUNTING FRAUD, AND THE COURT RECOGNIZES THAT.

2  MR. LIVESAY WORKED UNDER, HOWEVER, THE C.F.O. AND THE

3  CONTROLLER AND DID THEIR INSTRUCTION.  HE DID DIRECT EMERY

4  HARRIS, KAY MORGAN AND OTHERS AS TO THE SPECIFIC ENTRIES

5  TO MAKE; HOWEVER, IN NOVEMBER OF 1999, MR. LIVESAY COULD

6  NO LONGER STOMACH THE FRAUD.  I APPRECIATE MR. INGRAM

7  USING THOSE TERMS BECAUSE THAT WAS WHAT I RECALLED

8  MR. LIVESAY HAVING TESTIFIED TO, THAT HE COULD NO LONGER

9  STOMACH THE FRAUD, AND HE REQUESTED AND RECEIVED A

10 TRANSFER OUT OF ACCOUNTING.  HE BECAME CHIEF INFORMATION

11 OFFICER IN HEALTHSOUTH'S INFORMATION TECHNOLOGY DEPARTMENT

12 ALTHOUGH, AS THE GOVERNMENT ARGUES, HE CONTINUED TO

13 BENEFIT FROM THE FRAUD BY RECEIVING BONUSES AND INFLATED

14 STOCK.  HE NO LONGER ACTIVELY PARTICIPATED IN THE FRAUD.

15 MR. LIVESAY'S CESSATION OF ACTIVE PARTICIPATION IN THE

16 FRAUD DOES NOT MEET THE LEGAL REQUIREMENTS OF WITHDRAWAL

17 FROM THE CONSPIRACY SO AS TO PRECLUDE HIM FROM ANY

18 LIABILITY FOR THE CONSPIRACY BECAUSE HE DID NOT TAKE STEPS

19 TO DISCLOSE THE FRAUD OR BRING IT TO AN END.

20      MR. LIVESAY WAS AN ACCOUNTANT, NOT A LAWYER, AND

21 THE COURT DOUBTS THAT HE WAS AWARE OF THOSE LEGAL

22 REQUIREMENTS IN 1999.  BUT THE FACT REMAINS THAT HE CEASED

23 HIS ACTIVE PARTICIPATION IN THE CONSPIRACY THREE AND A

24 HALF YEARS BEFORE THE FRAUDULENT PRACTICES AT HEALTHSOUTH

25 CAME TO AN ABRUPT END IN MARCH OF 2003.  IN CONTRAST,

1  EMERY HARRIS AND KAY MORGAN, WHO DID INITIALLY WORK UNDER

2  MR. LIVESAY, WERE BOTH PROMOTED TO ASSISTANT CONTROLLER

3  AND ULTIMATELY TO VICE-PRESIDENT POSITIONS.  THEY

4  CONTINUED ACTIVE PARTICIPATION IN THE FRAUD LONG AFTER

5  MR. LIVESAY LEFT THE ACCOUNTING DEPARTMENT AND WERE STILL

6  PARTICIPANTS IN THE FRAUD IN MARCH OF 2003.

7       A FURTHER DISTINCTION BETWEEN MR. LIVESAY AND THE

8  OTHER DEFENDANTS IN THE HEALTHSOUTH FRAUD OR AT LEAST SOME

9  OF THE OTHER DEFENDANTS IN THE HEALTHSOUTH FRAUD IS THAT

10 MR. LIVESAY'S PARTICIPATION CEASED LONG BEFORE SARBANES-

11 OXLEY BECAME THE LAW AND STIRRED THINGS UP AT HEALTHSOUTH

12 IN THE SUMMER OF 2002.  TO RECAP SOME OF THE OTHER

13 SENTENCES, BILL OWENS, THE MASTERMIND OF THE DETAILS OF

14 THE FRAUD FROM DAY ONE THROUGH MARCH 2003 WHO ROSE FROM

15 ASSISTANT CONTROLLER TO BECOME C.F.O. AND THEN CEO

16 RECEIVED FIVE YEARS IN PRISON.  MIKE MARTIN, WHO WAS A

17 C.F.O. FOR A SUBSTANTIAL PART OF THE CONSPIRACY, RECEIVED

18 36 MONTHS.  MALCOM MCVAY, WHO WAS ONE TIME, AND IT'S MY

19 RECOLLECTION IT WAS FOR A SHORT PERIOD OF TIME, C.F.O. AND

20 TREASURER, RECEIVED 60 MONTHS PROBATION SENTENCE WITH SIX

21 MONTHS HOME DETENTION IN A LARGE PART BECAUSE OF HEALTH

22 ISSUES THAT ARE NOT RELEVANT HERE, AND THAT SENTENCE IS

23 AGAIN ON APPEAL.

24       AARON BEAM WAS C.T.O. AT THE TIME OF THE FRAUD

25 BUT LEFT EARLY ON.  HE RECEIVED A THREE MONTHS CUSTODIAL

1    SENTENCE BASED UPON ONE CHARGE OF BANK FRAUD.  AS MR.

2    SPINA POINTS OUT, RICHARD BOTTS, WHO WAS SENIOR VICE-

3    PRESIDENT AND IN THE TAXATION DEPARTMENT DURING THE ENTIRE

4    PERIOD OF THE FRAUD, INCLUDING AFTER SARBANES-OXLEY,

5    RECEIVED A PROBATIONARY SENTENCE OF 60 MONTHS AND WAS

6    RESENTENCED TO THE SAME SENTENCE AND THE GOVERNMENT DID

7    NOT APPEAL THAT SENTENCE.  BUT THOSE DEFENDANTS THAT I

8    INITIALLY WERE REFERRING TO BEFORE I JUMPED TO MR. BOTTS

9    WERE ALL DEFENDANTS WHO OCCUPIED POSITIONS AT HEALTHSOUTH

10   ABOVE MR. LIVESAY, WHO WAS ASSISTANT CONTROLLER DURING THE

11   ENTIRE TIME OF HIS PARTICIPATION OF THE FRAUD.

12        I HAVE ALREADY MENTIONED EMERY HARRIS' SENTENCE

13   OF FIVE MONTHS CUSTODY EVEN THOUGH HE PARTICIPATED IN THE

14   FRAUD UP TO ITS BITTER END, AND THEN KAY MORGAN RECEIVED A

15   48 MONTHS PROBATIONARY SENTENCE, WHICH I DO NOT BELIEVE

16   WAS APPEALED, EVEN THOUGH HE WAS PARTICIPATING IN THE SAME

17   KIND OF CONDUCT THAT MR. LIVESAY PARTICIPATED IN AND THE

18   GOVERNMENT NOW ARGUES MERITS 20 MONTHS IN CUSTODY.

19        THE COURT GIVES GREAT CONSIDERATION TO THE FACT

20   THAT MR. LIVESAY CEASED ACTIVE PARTICIPATION IN THE FRAUD

21   BEFORE ANY OF THE OTHERS WHOSE SENTENCES I HAVE JUST

22   OUTLINED EXCEPT PERHAPS MR. BEAM.  YES, HE DID PLAY A

23   SIGNIFICANT ROLE IN THE EARLY YEARS OF THE FRAUD BUT HE

24   SAW THE ERROR OF HIS WAYS AND REPENTED, AT LEAST TO THE

25   EXTENT OF NOT COMMITTING ANY FURTHER FRAUDULENT ACTIVITY

1   AT HEALTHSOUTH.  THAT CHANGE OF BEHAVIOR WARRANTS A

2   SENTENCE THAT DIFFERS FROM THE CUSTODIAL SENTENCES IMPOSED

3   ON THOSE WHO ACTIVELY PARTICIPATED AT A HIGHER LEVEL AND

4   LONGER THAN MR. LIVESAY.  IT ALSO JUSTIFIES, IN MY

5   OPINION, A DIFFERENT SENTENCE THAN RECEIVED BY EMERY

6   HARRIS, WHO CONTINUED TO PARTICIPATE IN THE FRAUD FAR

7   LONGER THAN MR. LIVESAY.

8        THEREFORE, PURSUANT TO THE COURT'S AUTHORITY

9   UNDER BOOKER TO IMPOSES A SENTENCE OUTSIDE THE GUIDELINE

10  RANGE AND ALSO EXERCISING THE DISCRETION OF THE COURT

11  RECOGNIZED BY THE UNITED STATES SUPREME COURT IN GALL, THE

12  COURT FINDS THAT THE DEFENDANT SHOULD BE SENTENCED TO A

13  TERM OF FIVE YEARS PROBATION AS TO COUNTS ONE AND TWO

14  SEPARATELY, TO BE SERVED CONCURRENTLY WITH THE OTHER.  THE

15  DEFENDANT SHALL RECEIVE CREDIT FOR ALL TIME HE HAS SERVED

16  ON PROBATION AND HIS ORIGINAL PROBATION EXPIRATION DATE

17  REMAINS IN EFFECT.  MY STRONG OPINION IS THAT THE SENTENCE

18  JUST IMPOSED IS REASONABLE AND APPROPRIATE WHEN TAKING

19  INTO ACCOUNT THE 5K1.1 DEPARTURE FACTORS DISCUSSED ABOVE

20  ALONG WITH THE FACTORS AT 18 U.S.C. SECTION 3553(A).  THE

21  EXTRAORDINARY FACTS OF THIS DEFENDANT'S ASSISTANCE AND THE

22  FACTS RELATED TO THE SENTENCES IMPOSED UPON THE OTHER

23  DEFENDANTS JUSTIFY A SUBSTANTIAL VARIANCE AT SENTENCING

24  GUIDELINE RANGE AS DETERMINED WITH A DEPARTURE.

25        I HAVE ALREADY COMMENTED UPON THE NATURE OF

1  PUNISHMENT OF PROBATION.  PROBATION IS NOT A CAKE WALK; IT

2  IS SUBSTANTIAL PUNISHMENT.  IT IS SUBSTANTIAL PUNISHMENT

3  FOR A CPA TO LOSE HIS LICENSE AS A RESULT OF HIS FELONY

4  CONVICTION.  IT IS SUBSTANTIAL PUNISHMENT FOR A PERSON TO

5  LIVE FOR ALMOST FIVE YEARS NOW WITH THE UNCERTAINTY THAT

6  HAS BEEN CAUSED BY THE REPEATED APPEALS BY THE GOVERNMENT

7  OF THE DEFENDANT'S SENTENCE.  THIS SWORD OF DAMOCLES HAS

8  HUNG OVER MR. LIVESAY'S HEAD FAR TOO LONG, AND IT'S TIME

9  NOW FOR THIS ORDEAL TO BE OVER.

10       WHILE ON PROBATION, THE DEFENDANT IS SUBJECT TO

11  THE STANDARD CONDITIONS PROVISION OF RECORD OF THIS COURT

12  AND THE FOLLOWING SPECIAL CONDITIONS:  THE MANDATORY DRUG

13  TESTING PROVISION OF 18 U.S.C. SECTION 3563(A) ARE WAIVED

14  UPON THE COURT'S FINDING THAT THE OFFENSE OF CONVICTION IS

15  NOT DRUG RELATED.  THERE IS NO CURRENT OR PAST HISTORY OF

16  SUBSTANCE ABUSE AND THAT IS LOW RISK OF ANY FUTURE

17  SUBSTANCE ABUSE BY THE DEFENDANT.

18       SECONDLY, THE DEFENDANT SHALL SERVE SIX MONTHS

19  HOME DETENTION WHICH MAY INCLUDE ELECTRONIC MONITORING

20  UNDER THE ADMINISTRATIVE SUPERVISION OF THE PROBATION

21  OFFICER.  THE DEFENDANT SHALL PAY THE COST OF MONITORING

22  UNLESS THE PROBATION OFFICER DETERMINES THAT THE DEFENDANT

23  DOES NOT HAVE THE ABILITY TO DO SO.  THE DEFENDANT HAS

24  ALREADY FULFILLED THAT CONDITION OF PROBATION.  I AM NOT

25  IMPOSING A SECOND TERM OF HOME CONFINEMENT MR. LIVESAY;

1  YOU HAVE ALREADY DONE THAT.  THE DEFENDANT IS ORDERED TO

2  PAY A FINE OF $10,000 AS PREVIOUSLY IMPOSED, WITH INTEREST

3  WAIVED.  THAT SENTENCE HAS ALREADY -- EXCUSE ME, THAT FINE

4  HAS ALREADY BEEN PAID IN FULL.  THE DEFENDANT IS TO PAY

5  THE MANDATORY ASSESSMENT FEE OF $200.  THAT ASSESSMENT FEE

6  HAS ALSO ALREADY BEEN PAID IN FULL BY THE DEFENDANT.

7          PURSUANT TO 18 U.S.C. SECTION 3663 (A)(C)(3), THE

8  COURT FINDS A NUMBER OF IDENTIFIABLE VICTIMS IS SO LARGE

9  AS TO MAKE RESTITUTION IMPRACTICABLE IN DETERMINING

10  COMPLEX ISSUES OF FACT RELATED TO THE CAUSE OR THE AMOUNT

11  OF THE VICTIMS' LOSSES WOULD COMPLICATE OR PROLONG THE

12  SENTENCING PROCESS TO A DEGREE THAT THE NEED TO PROVIDE

13  RESTITUTION TO ANY VICTIM IS OUTWEIGHED BY THE BURDEN ON

14  THE SENTENCING PROCESS.  THE DEFENDANT, HOWEVER, IS

15  FURTHER ORDERED TO FORFEIT TO THE UNITED STATES PROPERTY

16  IN THE AMOUNT OF $750,000, AND THE DEFENDANT HAS ALREADY

17  COMPLIED WITH THAT FORFEITURE ORDER.

18          IS THERE ANY OBJECTION FROM ANY PARTY AS TO THE

19  FINDING OF FACT, THE CALCULATION OF SENTENCE OR THE MANNER

20  IN WHICH THE SENTENCE WAS PRONOUNCED OR IMPOSED, OTHER

21  THAN THOSE PREVIOUSLY STATED FOR THE RECORD?

22          MR. INGRAM:  YOUR HONOR, THE GOVERNMENT HAS A FEW

23  OBJECTIONS WE WOULD LIKE TO MAKE ON THE RECORD, PLEASE.

24          THE COURT:  ALL RIGHT.

25          MR. INGRAM:  BEFORE I GET TO THOSE, YOUR HONOR, I

1  WOULD ASK THE COURT'S GUIDANCE ON, LIKE TO EITHER OFFER

2  THE TESTIMONY OF KEN LIVESAY FROM THE CRUMPLER TRIAL OR

3  ASK LEAVE OF THE COURT TO SUBMIT THAT, INCLUDE THAT IN THE

4  RECORD IN THIS PROCEEDING.  AND OF COURSE, WE WILL BE

5  HAPPY TO SUPPLY IT TO MR. LIVESAY'S ATTORNEY TO INCLUDE IT

6  AS PART OF THE RECORD.

7          THE COURT:  SEEMS TO ME IF YOU ARE GOING TO

8  INCLUDE HIS TESTIMONY FROM THE PRIOR TRIAL YOU SHOULD ALSO

9  INCLUDE HIS TESTIMONY FROM THE SCRUSHY TRIAL.

10         MR. INGRAM:  OH, VERY WELL.

11         THE COURT:  SO WE CAN JUST REALLY LOAD UP THE

12  RECORD IF YOU WANT TO.

13         MR. INGRAM:  VERY WELL, YOUR HONOR.

14         THE COURT:  MR. SPINA DO YOU HAVE ANY OBJECTIONS

15  TO THAT?

16         MR. SPINA:  TO PUTTING IT ALL IN OR TO PUTTING --

17         THE COURT:  WHICHEVER.

18         MR. SPINA:  WELL, I MEAN, THE EVIDENCE BEFORE THE

19  COURT TODAY IS THAT IT DIDN'T EXIST.  I MEAN, I CAN'T

20  REMEMBER WHAT HE SAID.  HE IS CONFIDENT HE DIDN'T SAY

21  THAT.  I WOULD OBJECT TO ANY FURTHER CLUTTER IN A RECORD

22  THAT IS ALREADY OVERWHELMING.  BUT IF THE COURT WERE GOING

23  TO LET IT IN, I WOULD WANT IT ALL IN.

24         THE COURT:  I WILL STATE THAT NOT LAST NIGHT BUT

25  SEVERAL MONTHS AGO WHEN THIS CASE CAME BACK AND LANDED IN

1  MY LAP, I DID REVIEW MR. LIVESAY'S TESTIMONY IN THE

2  CRUMPLER CASE.  AND IF MY MEMORY IS IN ERROR, IT WOULD BE

3  AS TO A VERY MINOR ASPECT OF MY DECISION TODAY.

4         MR. INGRAM:  IN LIGHT OF THE FACT THAT THE COURT

5  HAS GIVEN THAT TESTIMONY CONSIDERATION, THE GOVERNMENT

6  ASKS THAT THE TRANSCRIPTS FROM BOTH TRIALS, FROM

7  MR. LIVESAY'S TESTIMONY BE INCLUDED IN THE RECORD, PLEASE.

8         MR. SPINA:  SAME OBJECTION.  WITH THE COURT

9  HAVING IMPOSED THE SAME SENTENCE REGARDLESS OF --

10        THE COURT:  ABSOLUTELY.  ABSOLUTELY.  BECAUSE THE

11 FACTORS THAT I HAVE CONSIDERED, THE EVALUATION OF THE

12 OTHER SENTENCES IMPOSED, WHETHER THEY WOULD HAVE BEEN THE

13 ONE IS THAT THIS COURT WOULD HAVE IMPOSED, IF DOING SO

14 ORIGINALLY OR NOT, FAR OUTWEIGHS THE GOVERNMENT'S REQUEST

15 FOR A SENTENCE OF CUSTODY IN THIS CASE.

16        MR. INGRAM:  I UNDERSTAND THE COURT'S POSITION,

17 YOUR HONOR, BUT THE GOVERNMENT WOULD LIKE TO OFFER THE

18 TESTIMONY OF MR. LIVESAY IN THE SCRUSHY TRIAL AND THE

19 CRUMPLER TRIAL AS PART OF THE RECORD IN THIS PROCEEDING.

20        THE COURT:  I WILL TELL YOU WHAT I WILL DO.  IF

21 YOU DETERMINE IT NECESSARY YOU CAN FILE A WRITTEN MOTION

22 REQUESTING TO DO SO.

23        MR. INGRAM:  FOR LEAVE TO SUBMIT THOSE AS PART OF

24 THE RECORD?

25        THE COURT:  IF YOU DECIDE YOU NEED TO.

1              MR. INGRAM:  VERY WELL, YOUR HONOR.  THE

2    GOVERNMENT ALSO HAS SEVERAL OBJECTIONS IT WOULD LIKE TO

3    PLACE ON THE RECORD AT THIS TIME, YOUR HONOR.  THE

4    GOVERNMENT WOULD OBJECT TO THE EXTENT OF THE DEPARTURE FOR

5    THE COURT'S SENTENCE UNDER SENTENCING GUIDELINE 5K1.1.

6    GOVERNMENT ALSO OBJECTS TO THE UNREASONABLE VARIANCE THAT

7    WAS GIVEN TO THE FACTORS UNDER 3553(A), PARTICULARLY THE

8    NATURE OF THE OFFENSE IN QUESTION IN THIS CASE AND ALSO

9    THE COURT'S CONSIDERATION OF SENTENCING DISPARITY.  THE

10   GOVERNMENT ALSO OBJECTS TO THE COURT'S CONSIDERATION OF

11   FACTORS THAT WE BELIEVE WERE CONSIDERED FOR THE 5K AND

12   THEN AGAIN CONSIDERED IN THE COURT'S VARIANCE,

13   SPECIFICALLY MR. LIVESAY'S TESTIMONY THAT WAS GIVEN IN THE

14   RELATED CIVIL PROCEEDINGS.

15              THE COURT:  NOW, WAIT A MINUTE.  I CAN'T CONSIDER

16   HIS TESTIMONY IN THE CIVIL CASES IN CONSIDERING 5K.  AND I

17   DIDN'T.  BUT I CONSIDERED THAT IN, AS ONE OF THE MANY

18   FACTORS ABOUT HIS CHARACTER OR WHATEVER UNDER THE

19   SENTENCING FACTORS.  BUT I WANT TO BE CLEAR, I DID NOT

20   CONSIDER THAT AT ALL IN GRANTING YOUR 5K MOTION.

21              MR. INGRAM:  YOUR HONOR, VERY WELL.

22   NEVERTHELESS, JUST TO PRESERVE THE RECORD, I WOULD LIKE TO

23   LODGE THAT OBJECTION THAT IN THE EVENT THAT THE COURT,

24   UPON RECONSIDERATION OF THE RECORD, DID CONSIDER, GIVE

25   UNDUE CONSIDERATION TO HIS TESTIMONY IN THE CIVIL CASES AS

1  PART OF ITS SENTENCING DETERMINATION, WE WOULD OBJECT TO

2  THAT.

3          MR. SPINA:  YOUR HONOR, I OBJECT TO HIM SAYING

4  THAT.  THAT'S NOT WHAT THE COURT DID.  I MEAN, YOU JUST

5  CAN'T MAKE UP STUFF AND SAY I AM GOING TO OBJECT BECAUSE

6  WE THINK THE COURT SAID THIS.  SHE DIDN'T SAY THAT.

7          MR. INGRAM:  YOUR HONOR, MR. SPINA HAS SPENT MOST

8  OF THIS PROCEEDING ATTEMPTING TO PUT WORDS IN THE

9  GOVERNMENT'S MOUTH.  I WOULD LIKE TO LODGE THE

10 GOVERNMENT'S OBJECTION ON BEHALF OF THE UNITED STATES ON

11 THE RECORD WITHOUT MR. SPINA'S EDITORIAL COMMENTS.

12         MR. SPINA:  GOOD.  I ACCEPT IT.  I AM GRATIFIED

13 BY IT BEING INCENSED BY MY BEHAVIOR.

14         THE COURT:  OKAY.  HAVE YOU GOT OTHER

15 OBJECTIONS?

16         MR. INGRAM:  ONE OTHER OBJECTION I WOULD LIKE --

17 THE GOVERNMENT OBJECTS TO THE UNREASONABLE SUBSTANTIVE

18 CONSIDERATION OF THE FACT THAT MR. LIVESAY, IN THE COURT'S

19 OPINION, CEASED INVOLVEMENT OF THE FRAUD GIVEN HIS

20 TESTIMONY IN CRUMPLER AND SCRUSHY.  THAT'S ALL FOR THE

21 GOVERNMENT, YOUR HONOR.  THANK YOU.

22         THE COURT:  OKAY.

23         MR. SPINA:  I HAVE NO OBJECTIONS, YOUR HONOR.

24         THE COURT:  MR. LIVESAY, YOU HAVE THE RIGHT TO

25 APPEAL THE SENTENCE IMPOSED WITHIN TEN DAYS IF YOU BELIEVE

```
 1   THAT THE GUIDELINES HAVE BEEN MISAPPLIED OR THE SENTENCE

 2   IS OTHERWISE IN VIOLATION OF THE LAW.  IF YOU ARE UNABLE

 3   TO PAY THE COST, YOU MAY APPLY FOR LEAVE TO APPEAL IN

 4   FORMA PAUPERIS AND FOR APPOINTMENT OF COUNSEL.  IF YOU ARE

 5   SO ALLOWED, UPON YOUR REQUEST, THE CLERK OF THE COURT WILL

 6   ASSIST YOU IN PREPARING AND FILING THE NOTICE OF APPEAL.

 7           IS THERE ANYTHING ELSE THAT WE NEED TO TAKE UP?

 8           MR. SPINA:  YOUR HONOR, THERE WAS A $750,000

 9   FORFEITURE THAT WAS PREVIOUSLY IMPOSED, AND I DON'T KNOW,

10   I REMEMBER US TALKING ABOUT IT -- OH, HE DID?

11           THE COURT:  I HAVE REIMPOSED IT AND NOTED IT HAD

12   BEEN PAID IN FULL.

13           MR. SPINA:  I MUST HAVE DRIFTED OFF THEN.  THANK

14   YOU, JUDGE.

15           THE COURT:  THAT'S ALL RIGHT.  ANYTHING ELSE?

16           MR. SPINA:  NO, MA'AM.

17           MR. INGRAM:  THANK YOU, YOUR HONOR.

18           THE COURT:  AND LET ME REITERATE, I BELIEVE IT'S

19   TIME FOR THIS TO COME TO AN END.

20                   (COURT IN RECESS)

21

22

23

24

25
```

```
1    ****************************************************
2                    C E R T I F I C A T E
3    ****************************************************
4
5    IN RE:  USA V. KENNETH K. LIVESAY
6            2:03-CR-182-KOB
7
8
9         I HEREBY CERTIFY THAT THE FOREGOING
10   TRANSCRIPT IN THE ABOVE-STYLED CAUSE IS TRUE AND
11   ACCURATE.
12
13   _____    JULY 30, 2008
14   \S\LINDY M. FULLER, RMR, CRR,          DATE
15   FEDERAL OFFICIAL COURT REPORTER
16
17
18
19
20
21
22
23
24
25
```